STATE OF NORTH CAROLINA v. PATRICK C. NICKERSON

No. 713SC683

(Filed 15 December 1971)

**Criminal Law § 84; Searches and Seizures § 1— standing to object to illegal search — apartment rented by another**

Defendant had no standing to object to the illegal search of an apartment rented by a female friend of defendant, notwithstanding defendant stayed overnight in the apartment three or four nights a week and had been given permission to use the apartment whenever he pleased; consequently, an M-14 rifle discovered during the search was properly admitted in evidence in the trial of defendant for homicide.

APPEAL by defendant from *Rouse, Judge,* 5 April 1971 Session of Superior Court held in CRAVEN County.

The defendant, along with Barry Alfred Ferguson, John J. Andrade, and Roby Wesley Lancaster, was charged with the murder of Gregory Clark Amerson on Saturday, 26 September 1970. Defendant and John J. Andrade were tried jointly. Roby Wesley Lancaster, one of the four defendants, testified for the State.

The State's evidence tended to show that on 26 September 1970 the four defendants decided to get some money by robbing a gas station. A M-14 rifle was secured and the four walked to Darnell's Gulf Station on Broad Street in the city of New Bern. Before arriving at Darnell's Gulf Station, defendant Nickerson took possession of the M-14 rifle. While defendants were observing the activities in and around the Gulf Station, the deceased, Gregory Clark Amerson, pushed his vehicle onto the parking area of the Gulf Station and began working upon its engine. Defendants Nickerson and Andrade decided to rob the man who was working on his car. Several shots were heard from a high powered rifle; defendants, Nickerson and Andrade, were observed running from the scene, defendant Nickerson carrying the M-14 rifle. The deceased was hit by three shots, two of which caused his immediate death. Three 7.62 millimeter expended cartridge cases were found near the scene. The M-14 rifle is a caliber 7.62 millimeter.

The State's evidence further tended to show that on Sunday, 27 September 1970, or Monday, 28 September 1970, de-

fendant Nickerson went to the apartment of one Shirley Mae Carr stating that he wanted to leave something upstairs; that he went upstairs in her apartment and then left. On Wednesday, 30 September 1970, New Bern police officers conducted a warrantless search of Shirley Mae Carr's apartment and recovered a M-14 rifle which had been partly disassembled. They also recovered a supply of 7.62 millimeter ammunition.

Evidence for defendant Nickerson tended to show that his part in the plan to rob a filling station was to act as a lookout. The other three defendants were to accomplish the actual robbery. Defendant Ferguson supplied the M-14 rifle and the ammunition. The defendant Lancaster took the rifle to the scene and ran from the scene with it after the shots were fired. Defendant Nickerson grabbed the rifle out of defendant Lancaster's hand as they were running from the scene. Defendant Nickerson carried the rifle to a point where he hid it in some bushes. Two or three days later he took it to Shirley Mae Carr's apartment where he partly disassembled it. He placed it in Shirley Mae Carr's apartment for safekeeping until he could return it to defendant Ferguson.

The jury returned a verdict of guilty of murder in the second degree and judgment of confinement for a term of thirty years was entered. Defendant appealed.

*Attorney General Morgan, by Assistant Attorney General Satisky, for the State.*

*Robert G. Bowers for the defendant.*

BROCK, Judge.

At trial defendant was represented by privately employed counsel from Chicago, Illinois, and privately employed counsel from New Bern, North Carolina. After the trial, upon petition alleging that defendant's resources had been exhausted, the trial judge allowed privately employed counsel to withdraw and appointed present counsel to perfect this appeal. It is a much sounder practice to require trial counsel to perfect an appeal; trial counsel is in position to know and to answer pertinent questions about what transpired at trial.

Presumably privately employed counsel negotiated a contract for adequate compensation to represent defendant on trial.

It does not seem equitable to allow adequately compensated trial counsel to withdraw after they have exhausted defendant's resources and to cast the burden of court appointment upon new counsel. Conduct in this regard by out-of-state counsel is controllable under G.S. 84-4.1(3) as an initial condition upon which he is allowed to appear for trial.

Defendant assigns as error that the trial judge refused to suppress the evidence obtained in the warrantless search of Shirley Mae Carr's apartment. Before the trial started defendant filed a motion to suppress the evidence obtained by the search and an evidentiary hearing was conducted on his motion.

The evidence on the motion to suppress tended to show the following. The New Bern police officers had searchd for three days for a high powered rifle in an area of seven to nine blocks of Darnell's Gulf Station. They had searched for it in storm drains, under houses, and in other places. They had checked the neighborhood from door to door and talked to people up and down the streets in an effort to find someone who had knowledge of the location of a high powered rifle. On 30 September 1970 Captain Bratcher, the Captain of Detectives in New Bern, received a call from Officer Rodgers advising that he had information that there was a high powered rifle in Shirley Mae Carr's apartment at 0-135 Craven Terrace. This apartment was approximately seven blocks from Darnell's Gulf Station. Captain Bratcher knew Shirley Mae Carr and knew that she had a police record. Taking several other officers with him, Captain Bratcher went to Shirley Mae Carr's apartment and conducted a search without a search warrant and without anyone's consent. Shirley Mae Carr was not present but the door to the apartment was unlocked and the officers went in; she returned to the apartment before the officers left, but after they had completed the search. A M-14 rifle and ammunition was found in her bedroom on the second floor. At the time of the search defendant Nickerson had not been taken into custody, and he was not known to Captain Bratcher.

The evidence further tended to show that Shirley Mae Carr was acquainted with defendant Nickerson and that she had known him about two or three months. She testified that defendant Nickerson had stayed overnight in her apartment approximately three or four nights a week, and she had told him he

could use her apartment and make himself at home whenever he pleased. There were times when defendant gave her money for her household things. She testified that defendant came to her apartment on 29 September 1970, saying that he wanted to leave something upstairs, and then he left. She testified that she rented the apartment from the government and that as long as she paid the rent she could allow anyone she wished to stay there. She further testified that she paid the rent and that defendant did not pay the rent.

At the conclusion of the hearing, the trial judge ruled that defendant Nickerson had no standing to object to the illegal search of Shirley Mae Carr's apartment, and denied defendant's motion to suppress.

We hold that the trial judge was correct in denying defendant's motion to suppress for lack of "standing" to object to the introduction of evidence on the ground that it was obtained by a search and seizure in violation of the Fourth Amendment.

Although there is some question whether the Federal requirements relating to "standing" have been specifically made applicable to the State (*Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L. Ed. 2d 797), we find that the defendant had no "standing" to object under either the Federal or State requirements. See *Jones v. U.S.,* 362 U.S. 257, 80 S.Ct. 725, 4 L. Ed. 2d 697; *State v. Ray,* 274 N.C. 556, 164 S.E. 2d 457. Defendant is not one "aggrieved by an unlawful search and seizure," because he does not belong to the class for whose sake the constitutional protection is given. Defendant Nickerson was not a victim of a search and seizure, one against whom the search was directed. The search and seizure was directed to the rifle in Shirley Mae Carr's residence. Thus, defendant comes within the class who can only claim prejudice through the use of evidence gathered as a consequence of a search or seizure directed to someone else. This class is not one for whose sake the constitutional protection is given. Upon the facts of this case, Nickerson, himself, was not the victim of an invasion of privacy and had no "standing" to object to the introduction of the evidence.

The defendant's assignment of error No. 2 that the trial court erred in refusing to grant the defendant's motion for acquittal and assignment of error No. 3 that the trial court erred

in refusing to grant the defendant's motion for mistrial are both based and related to the motion to suppress the evidence. Assignments of error No. 2 and No. 3 are without merit and are overruled.

In our opinion defendant had a fair trial, free from prejudicial error.

No error.

Judges BRITT and VAUGHN concur.